# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# 5:06-CR-22

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| JONATHAN TERRELL PATTERSON | ) | |
| and THOMAS JOSEPH ISBELL, | ) | |
| Defendants. | ) | |
| | ) | |

**THIS MATTER** is before the court on Motions for a Judgment of Acquittal or for a New Trial filed on February 13, 2008 by Thomas Joseph Isbell (Document #609) and Jonathan Terrell Patterson (Document #610) and the Government's Responses (Documents ##618, 620), filed February 25, 2008. This matter is now ripe for disposition.

## BACKGROUND

On February 6, 2008, at the conclusion of their joint trial, Defendants Thomas Joseph Isbell (hereinafter "Isbell") and Jonathan Terrell Patterson (hereinafter "Patterson") were convicted by a jury of conspiracy to distribute cocaine and cocaine base in violation of 21 U.S.C. § 846, the only count with which each was charged. Both Defendants have since filed motions for a judgment of acquittal or for a new trial, and both Defendants raise nearly identical factual and legal issues in support of these motions.

## ANALYSIS

### A. Standard of Review

For a judgment of acquittal pursuant to FED. R. CRIM. P. 29, the evidence must be so insubstantial that, when viewed in the light most favorable to the government, no rational trier of fact

1

could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); Hamling v. U.S., 418 U.S. 87, 124 (1974); United States v. Brewer, 1 F.3d 1430, 1437 (4th Cir. 1993).

A district court has broader authority to grant a new trial pursuant to FED. R. CRIM. P. 33. When considering a motion for a new trial, this court "is not constrained by the requirement that it view the evidence in the light most favorable to the government." United States v. Arrington, 757 F.2d 1484, 1485 (4th Cir. 1985). Instead, a district court should grant a new trial "when the evidence weighs so heavily against the verdict that it would be unjust to enter judgment." Id.

**B. Sufficiency of Evidence**

Both Patterson and Isbell claim that the evidence presented at trial was insufficient to prove the existence of a single conspiracy or to prove that they knowingly and voluntarily became a part of this conspiracy. This assertion is insupportable. Defendants' guilt was amply established by the testimony of other members of the conspiracy and by the testimony of the law enforcement officers investigating the conspiracy. In addition, crack cocaine was found on Isbell's person by law enforcement officers executing a search warrant and on Patterson's person following a lawful traffic stop.

In light of all the facts adduced by the government linking Isbell and Patterson to a single conspiracy to sell and distribute cocaine and cocaine base, and when viewed in the light most favorable to the government, the evidence was sufficient for a rational trier of fact to find both Defendants guilty beyond a reasonable doubt as to all of the essential elements of the crime. Therefore, Defendants' request for a judgment of acquittal on this basis pursuant to Rule 29 will be denied. Furthermore, the evidence does not weigh so heavily against the verdict that entry of

2

judgment would be unjust, and Defendants' request for a new trial pursuant to Rule 33 will also be denied.

### C. Relevance of State Charges

During the trial, the court allowed the government to present evidence of criminal activity committed by the Defendants during the course of the conspiracy. The Defendants disagree with the court's related decision to exclude evidence that the state charges resulting from these incidents were dismissed, and they argue that an acquittal or a new trial is warranted on this basis.

Defendants' argument is in error for two reasons. First, the decision to exclude this evidence was well within this court's discretion. Like all decisions regarding relevance, this determination is governed by the Federal Rules of Evidence, particularly Rules 401 and 403. This court rightly excluded the evidence as irrelevant and likely to cause confusion. State prosecutors make decisions to drop or press charges that often have little or nothing to do with guilt or innocence, and the decision to drop state charges against a defendant has no bearing on a defendant's guilt of a federal crime with distinct elements. See United States v. Halteh, 224 Fed. Appx. 210, 214 (4th Cir. 2007) (unpublished) (upholding decision of a district court to exclude evidence of a defendant's *acquittal* on related state charges).

Second, because this evidence is irrelevant, its exclusion does not cast the accuracy of the verdict into serious doubt. As discussed above, sufficient evidence supported Defendants' convictions, and irrelevant evidence concerning the dismissal of state charges does little, if anything, to counter this evidence of guilt. For all of these reasons, Defendants' motions for acquittal or for a new trial on this basis are similarly denied.

### D. Exclusion of Evidence of Racial Bias and Selective Prosecution

Defendants also challenge this court's decision to foreclose questioning regarding selective prosecution and racial bias in the criminal investigation leading to Defendants' arrests. Specifically, the attorneys for Defendants sought to elicit evidence from the testifying case agent that the government was aware of similar criminal activity involving white individuals who were not before the court. However, the defense of selective prosecution is "a motion alleging a defect in instituting the prosecution" and must be raised before trial. United States v. Schmidt, 935 F.2d 1440, 1449-50 (4th Cir. 1991); FED. R. CRIM. P. 12(b)(3)(A). Because Defendants failed to raise this argument until after the close of the government's case, this defense was waived.[1]

Even if the defense had not been waived, a defendant faces a heavy burden to establish a claim of selective prosecution or selective enforcement. To prevail on a claim for selective prosecution, a defendant must show that his prosecution "had a discriminatory effect and that it was motivated by a discriminatory purpose." United States v. Olvis, 97 F.3d 739, 743 (4th Cir. 1996) (quotation omitted). This requires demonstrating "(1) that similarly situated individuals of a different race were not prosecuted . . . and (2) that the decision to prosecute was invidious or in bad faith." Id. (quotations omitted). In determining whether a defendant has satisfied this burden, prosecutorial decisions are granted a "presumption of regularity," and "in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." United States v. Armstrong, 517 U.S. 456, 464 (1996) (quotation omitted). As is apparent, this standard is

---

[1]Although there is an exception for good cause, this exception does not apply in the present case because (1) Defendants only had themselves to blame for the failure to file on time, (2) there is no evidence to suggest that the government can be faulted for Defendants' failure to file on time, and (3) no new information was received after the filing deadline. United States v. Cross, 256 Fed. Appx. 623, 627-28 (4th Cir. 2007) (unpublished); FED. R. CRIM. P. 12(e); see also United States v. Chavez, 902 F.2d 259, 263-64 (4th Cir. 1990).

4

intentionally "demanding" in order to avoid the unnecessary impairment of a core executive constitutional function. Id. at 463, 465.

The standard for establishing a claim for selective enforcement is equally rigorous. Like a claim for selective prosecution, a claim for selective enforcement is properly brought under the Equal Protection Clause. Whren v. United States, 517 U.S. 806, 812-13 (1996). And as with a claim of selective prosecution, a claim for selective enforcement requires a showing of purposeful discrimination. Orgain v. City of Salisbury, 2008 WL 5396483, *11 (4th Cir. 2008) (unpublished); Butler v. Cooper, 554 F.2d 645, 647 (4th Cir. 1977). Thus, the proof necessary to maintain a claim for selective enforcement is substantially similar to the proof required for a showing of selective prosecution. See United States v. Bullock, 94 F.3d 896, 899 (4th Cir. 1996).

In the present case, Defendants have not satisfied the rigorous standards necessary to establish a claim for either selective prosecution or selective enforcement. As evidence of racial discrimination in the investigation and prosecution of this case, Defendants proffered evidence that several white attorneys in the same county were involved with drugs, that this information was known to the police as a result of the investigation that led to the indictment of Defendants, and that these white attorneys had not been prosecuted. In addition, defense counsel averred that "less than five" of the ninety-one people arrested in connection with the investigation of this case were non-black.

However, Defendants did not provide sufficient evidence showing that they were similarly situated to the white attorneys for equal protection purposes. For instance, defense counsel seemed to admit that all but one of the white attorneys was a user and not a distributor of drugs. Even assuming that the white attorneys were similarly situated to Defendants, Defendants' claims still fail because they have produced no evidence of discriminatory intent. Although Defendants proffered

5

evidence that the vast majority of people arrested in connection with this and other similar crack cocaine investigations were black, it is well settled that "statistical evidence of racial disparity is insufficient to infer that prosecutors in a particular case acted with a discriminatory purpose." Olvis, 97 F.3d at 746. In Olvis, the defendants alleged selective prosecution because all twenty-five defendants indicted by the government were black, while several whites had either been granted immunity or had not been prosecuted. As additional evidence of discrimination, the defendants in that case pointed to a study finding that blacks comprised 90% of all people indicted for crack cocaine trafficking in their area. Id. at 741.

However, in the absence of information regarding the racial make-up of crack users and distributors as a whole, the Fourth Circuit held that "raw data about the percentage of black crack cocaine defendants proves nothing." Id. at 745. Thus, the study offered by the defendants was insufficient to establish either discriminatory effect or discriminatory intent on a claim of selective prosecution. Id. Furthermore, the court noted that the defendants' contention of racial discrimination in the government decision to grant immunity to the white co-conspirators was undercut by the fact that at least fifty black co-conspirators were also either granted immunity or not charged in the case. Id. at 745.

The facts of the instant case are analogous to the facts in Olvis. Like the defendants in Olvis, Defendants in this case offered no evidence establishing the racial composition of local crack users and distributors for comparison to the pool of those indicted in this case. As a result, Defendants' statistics fail to prove discriminatory effect or discriminatory intent. Also similar to Olvis, the decision not to prosecute the white attorneys in this case offers scant support for Defendants' claims of racial discrimination because of the government's related decision not to prosecute a much larger

6

number of other citizens whose names also arose during the course of the investigation. Lacking any direct evidence of racial animus on the part of the police or prosecutors, the court in this case properly avoided "the danger of enmeshing the court in mini-trials" about the propriety of tangential investigatory and prosecutorial decisions, as "[f]ocusing on such collateral matters would unduly encumber the court's proceedings." Bullock, 94 F.3d at 899.

In sum, Defendants have produced no evidence of discriminatory intent on the part of the federal prosecutors or the investigating case agents, and without this evidence, Defendants' claims for selective prosecution and enforcement must fail. Because these claims were not viable, the court was justified in excluding questioning directed towards this issue as irrelevant, likely to cause confusion, likely to cause undue delay, and a waste of time. See United States v. Bostian, 59 F.3d 474, 480 (4th Cir. 1994) (holding that a district court properly precluded questioning regarding a defense of reliance when the evidence proffered in support did not satisfy the elements of this defense). Since Defendants' allegations of selective prosecution and enforcement are unsupported by the evidence, these claims do not undermine the jury's verdict in this case. Accordingly, neither a judgment of acquittal nor a new trial will be granted on this basis.

### E. Evidence of Violation of Sequestration Order[2]

At trial, Defendants presented evidence that government witnesses were violating this court's sequestration order. In response, the court allowed Defendants to cross-examine witnesses extensively concerning this issue. During the course of these examinations, the jury was made aware that witnesses were housed together and had regular contact with one another. In addition, this court gave a special instruction to the jury to consider these facts when assessing witness credibility.

---

[2] Only Patterson raises this argument in his motion.

7

The Fourth Circuit recognizes "three remedies when a sequestration order has been violated: sanction of the witness; instructions to the jury that they may consider the violation toward the issue of credibility; or exclusion of the witness' testimony." United States v. Cropp, 127 F.3d 354, 363 (4th Cir. 1997). However, "[t]he remedy of exclusion is so severe that it is generally employed only when there has been a showing that a party or a party's counsel caused the violation." Id. In the present case, there was no such showing. Thus, the court's decision to remedy any violation of the sequestration order by instructing the jury on the issue of credibility was both appropriate and reasonable. Because the court gave this instruction, the jury was able to weigh the witnesses' testimony accordingly and fulfill the jury's role as ultimate fact-finder. And because the jury was aware of possible violations of the sequestration order when considering the evidence, this information does not place the jury's verdict in doubt.

## CONCLUSION

Despite Defendants' arguments, the evidence in this case was substantial enough to support the jury's verdict, and none of the arguments raised by Defendants make the entry of judgment in this case unjust. **WHEREFORE**, for the foregoing reasons, the Defendants' motions for a new trial or for a judgment of acquittal are **DENIED**.

Signed: March 16, 2009

Richard L. Voorhees
United States District Judge